IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN D. WILTREK,<br><br>         Plaintiff,<br><br>    vs.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,[1]<br><br>         Defendant. | Civil Action No. 18-131 |

AMBROSE, Senior District Judge

## OPINION
## and
## ORDER OF COURT

### SYNOPSIS

Pending before the Court are Cross-Motions for Summary Judgment. [ECF Nos. 10 and 14]. Both parties have filed Briefs in Support of their Motions. [ECF Nos. 11 and 15]. After careful consideration of the submissions of the parties, and based on my Opinion set forth below, I am granting Defendant's Motion for Summary Judgment [ECF No. 14] and denying Plaintiff's Motion for Summary Judgment [ECF No. 10].

### I. BACKGROUND

Plaintiff has brought this action for review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act") and for Supplemental Security Income ("SSI") under

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017, and is automatically substituted as the Defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).

Title XVI of the Act. On or about July 23, 2014, Plaintiff applied for SSI and DIB, alleging disability beginning December 31, 2013. [ECF No. 8-6, Exs. 1D, 2D]. His date last insured was December 31, 2017.[2] [ECF No. 8-2, at 26]. The state agency denied his claims initially, and he requested an administrative hearing. [ECF No. 8-4, Ex. 5B]. Administrative Law Judge ("ALJ") Christian Bareford held a hearing on September 8, 2016, at which Plaintiff was represented by counsel. [ECF No. 8-2, at 43-87]. Plaintiff appeared at the hearing and testified on his own behalf. Id. A vocational expert also was present at the hearing and testified. Id. at 75-84. In a decision dated November 2, 2016, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform and, therefore, that Plaintiff was not disabled under the Act. [ECF No. 8-2, at 24-37]. Plaintiff requested review of the ALJ's determination by the Appeals Council, and, on December 12, 2017, the Appeals Council denied Plaintiff's request for review. [ECF No. 8-2, at 1-3]. Having exhausted all of his administrative remedies, Plaintiff filed this action.

The parties have filed Cross-Motions for Summary Judgment. [ECF Nos. 10 and 14]. The issues are now ripe for my review.

## II.   LEGAL ANALYSIS

### A.   STANDARD OF REVIEW

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d

---

[2] To receive DIB, Plaintiff must establish that he became disabled prior to December 31, 2017, the date on which his insured status expired, or "date last insured." 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B); 20 C.F.R. § 404.131(a).

2

900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Additionally, the Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. Palmer v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. See 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382(a)(3)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. §§ 404.1520, 416.920. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920.  The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406.  Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5).  Id.

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing.  Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

**B.    RESIDUAL FUNCTIONAL CAPACITY (RFC) – MEDICAL OPINION EVIDENCE**

At Step Two of his analysis, the ALJ found that Plaintiff had the following severe impairments:  major depressive disorder, obesity, obstructive sleep apnea, anxiety disorder, panic disorder, posttraumatic stress disorder, essential hypertension, asthma, and degenerative joint disease of the right knee.  [ECF No. 8-2, at 26-27].  The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except: he could sit for up to 7 hours over the course of an 8-hour workday, but was limited to standing for no more than 1 hour and must have the ability to alternate sitting for 5 minutes for every 25 minutes of standing; he could walk for no more than 1 hour over the course of an 8-hour workday with the ability to alternate to sitting for every 25 minutes of walking; he could operate foot controls on the right no more than occasionally; he could occasionally climb ramps and stairs; he could never kneel or crawl; he could never be exposed to unprotected heights, moving mechanical parts, or operation of a motor vehicle as part of the position; he could never be exposed to humidity, wetness, dust, odors, fumes, or pulmonary irritants as a requirement of the position; he could never be exposed to vibrations as a requirement

of the position; he could occasionally be exposed to weather and extreme heat; he was able to apply common sense understanding to carry out detailed, but uninvolved, written or oral instructions and was able to deal with problems involving a few concrete variables in or from standardized situations; he could have no more than frequent interaction with supervisors; he was limited to work requiring only cursory interactions with coworkers, which do not involve persuading, negotiating, or instructing; he could have contact with a member of the public as part of the position, but was not able to have interaction with any more than 4 members of the public at any one time; and he was limited to tolerating few changes in a routine work setting defined as a stable work environment where the work place and work process remain generally the same for at least 2/3 of the time. Id. at 29-35. The ALJ concluded that jobs existed in significant numbers in the national economy that Plaintiff could perform, including surveillance system monitor, addresser, and ticket checker. Id. at 35-36.

Plaintiff argues that the ALJ's RFC analysis failed to take into account the findings and opinions of his treating psychologist, Dorothy Gold, Ph.D. [ECF No. 11, at 8-9]. Specifically, Plaintiff contends that Dr. Gold's findings that Plaintiff has marked or extreme limitations in seven separate areas confirm his "utter inability to perform work on a full-time basis." Id. at 8. He further argues that the ALJ failed to incorporate Dr. Gold's opinion that Plaintiff's mental impairments would lead to his missing 4 or more days of work per month into his hypothetical question to the VE. Id. at 8-9. After careful review, I find that Plaintiff's argument is without merit.

The amount of weight accorded to medical opinions is well-established. Generally, the opinions of a claimant's treating physicians are entitled to substantial and, at times, even

controlling weight. 20 C.F.R. §§ 404.1527(c), 416.927(c).[3] To be entitled to controlling weight, however, the treating physician's opinion must be well supported by medical techniques and consistent with the other substantial evidence of record. See Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001). To determine the weight of a treating physician's opinion, the ALJ may consider a number of factors, including consistency, length of treatment, corroborating evidence, and supportability. 20 C.F.R. §§ 404.1527, 416.927. As the Court of Appeals for the Third Circuit has explained:

> "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)). However, "where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. Id. Similarly, under 20 C.F.R. § 416.927[(c)](2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

Becker v. Comm'r of Soc. Sec. Admin., 403 F. App'x 679, 686 (3d Cir. 2010). Although the ALJ may choose whom to credit when faced with a conflict, he "cannot reject evidence for no reason or for the wrong reason." Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 505 (3d Cir. 2009). The ultimate issue of whether an individual is disabled within the meaning of the Act is for the Commissioner to decide. 20 C.F.R. §§ 404.1527(d)(1), (3); 416.927(d)(1), (3). Likewise, the final responsibility for determining a claimant's RFC is reserved to the Commissioner, who will not

---

[3] Although the regulations governing the evaluation of medical evidence were recently amended, the version effective March 27, 2017, does not apply to the present claim. See 20 C.F.R. §§ 404.1527, 416.927 (2017); 20 C.F.R. §§ 404.1520c, 416.920c (2017).

give any special significance to the source of another opinion on this issue. Id. §§ 404.1527(d)(2), (3); 416.927(d)(2), (3).

Here, Dr. Gold issued several opinions between 2014 and 2016. In August 2014, Dr. Gold completed a medical source statement opining, inter alia, that Plaintiff had marked restrictions on his ability to understand and remember complex instructions and his ability to interact appropriately with supervisors and co-workers; and extreme restrictions on his ability to carry out complex instructions, make judgments on complex work-related decisions, and respond appropriately to usual work situations and to changes in a routine work setting. [ECF No. 8-10 (Ex. 9F)].[4] In October 2014, Dr. Gold opined that Plaintiff could not work "for physical and emotional reasons." [ECF No. 8-12 (Ex. 23F, at 86)]. In July 2016, Dr. Gold opined that Plaintiff could not ever return to work "due to major health issues and anxiety." Id. at 5-6. Finally, in August 2016, Dr. Gold completed a mental medical source statement in which she again opined that Plaintiff could not work in any position due to emotional and physical factors. [ECF No. 8-13 (Ex. 26F)]. Among other things, Dr. Gold concluded that Plaintiff was "unable to meet competitive standards" in his ability to: maintain attention for a two-hour segment; maintain regular attendance and be punctual within customary tolerances; work in coordination with or proximity to others without being unduly distracted; complete a normal workday without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; respond appropriately to changes in a routine work setting; deal with normal work stress; understand and remember detailed instructions; deal with stress of semiskilled and skilled

---

[4] Dr. Gold also opined that Plaintiff had no restrictions on his ability to understand, remember, or carry out simple instructions, or to interact appropriately with the public, and moderate restrictions on his ability to make judgments on simple work-related decisions. [ECF No. 8-10 (Ex. 9F)].

7

work; interact appropriately with the general public; travel in unfamiliar places; or use public transportation. Id. Dr. Gold further opined that Plaintiff was "seriously limited" in his ability to: understand and remember very short and simple instructions; sustain an ordinary routine without special supervision; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; be aware of normal hazards and take appropriate precautions; carry out detailed instructions; maintain socially acceptable behavior; and adhere to basic standards of neatness and cleanliness. Id.[5] Dr. Gold concluded that Plaintiff would be absent from work more than four days per month and would experience multiple stressors in a job situation. Id.

After thorough consideration of each of Dr. Gold's opinions, the ALJ gave them "partial weight." [ECF No. 8-2, at 33-34]. In so doing, he found that Dr. Gold's opinion that Plaintiff had limitations in the areas of social functioning and concentration, persistence, and pace was consistent with the evidence of record, but not to the extent found by Dr. Gold. Id. Among other things, the ALJ explained that the evidence showed generally normal mental status examination findings, other than mood and affect disturbances; as well as an ability to be a single parent to three daughters, perform personal care tasks, perform household chores, drive, go out alone, grocery shop, count change, watch television, go to church, coach several soccer teams, help his ill mother, go out once a week with friends, attend church, tutor a student in math, use a cell phone, text message, and use Facebook. Id. The ALJ gave no weight to Dr. Gold's opinion regarding physical limitations or her conclusion that Plaintiff was disabled because Dr. Gold is not a medical doctor, physical impairments are not her specialty, and she is not qualified to comment

---

[5] Dr. Gold opined that Plaintiff had limited but satisfactory ability to remember work-like procedures; carry out very short and simple instructions; make simple work-related decisions; and ask simple questions and request assistance. [ECF No. 8-13 (Ex. 26F)].

on the ultimate issue of disability, because it is an issue left to the Commissioner.  Id.  The ALJ also cited and gave "great weight" to the opinion of state agency psychological consultant, Erin Urbanowicz, Psy.D., who concluded that Plaintiff had no more than moderate work-related limitations due to his mental health impairments.  Id. at 34-35 (citing Ex. 2A).[6]

The ALJ's reasons behind the weight assigned to Dr. Gold's opinions are acceptable reasons for discounting opinion evidence.  See 20 C.F.R. §§ 404.1527; 416.927.  Based on the same, I am able to conduct a proper and meaningful review.  I further find the reasons the ALJ provided in weighing Dr. Gold's opinions were explained sufficiently and well-supported by substantial evidence of record.  [ECF No. 8-2 at 33-34, and exhibits cited therein].  It is well-established that the Court cannot reweigh the evidence.  Because the ALJ has sufficiently explained his decision, the decision is in accordance with the law, and the decision is supported by substantial record evidence, the ALJ did not err in this regard, and remand is not warranted on this basis.[7]

For these same reasons, Plaintiff's argument that the ALJ's questions to the vocational expert did not fully encompass his impairments also fails.  Pl.'s Br. [ECF No. 11] at 8-9.  An ALJ is only required to accept the responses that accurately reflect a claimant's impairments.  See Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984); Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987).  As set forth above, the record contains substantial evidence that the

---

[6]  Dr. Urbanowicz considered Dr. Gold's October 2014 opinion, but found that some of Dr. Gold's opinions overestimated the severity of Plaintiff's functional restrictions, were based on Plaintiff's subjective complaints, and were inconsistent with other medical and non-medical evidence of record.  [ECF No. 8-3 (Ex. 2A)].

[7] To the extent Plaintiff supports her argument by suggesting that Dr. Gold's opinions are consistent with other medical evidence, the standard is not whether there is evidence to establish Plaintiff's position but, rather, is whether there is substantial evidence to support the ALJ's finding. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Thus, such support is misplaced.

hypothetical questions the ALJ adopted accurately reflected Plaintiff's impairments and, thus, the ALJ did not err in declining to include the additional limitations Plaintiff urges. [ECF No. 8-2, at 35-36, 75-84].

In short, the responsibility for determining a claimant's RFC ultimately rests with the ALJ. 20 C.F.R. §§ 404.1527(d); 404.1546; 416:927(d); 416.946. Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Here, the ALJ did not discount Plaintiff's complaints in their entirety, but, rather, included numerous limitations related to Plaintiff's mental (and physical) impairments in his RFC finding, as set forth more fully above. Moreover, the ALJ supported this RFC finding with substantial evidence, including, inter alia, Plaintiff's treatment records; medical opinion evidence; medication history; hearing testimony; and activities of daily living. See id. at 29-35 (citing, inter alia, Exs. 2A, 6E, 15E, 1F, 2F, 4F, 7F, 9F, 11F, 17F, 19F, 20F, 21F, 23F, 26F, 27F, and Hearing Testimony). Because the ALJ properly evaluated the medical opinion evidence and generously accounted for Plaintiff's limitations established by substantial evidence of record, I find that he did not err in formulating Plaintiff's RFC. Accordingly, there is no basis for remand on this issue.

### C. WHETHER THE ALJ ERRED IN FINDING THAT PLAINTIFF'S IMPAIRMENTS DID NOT MEET OR EQUAL A LISTED IMPAIRMENT

Plaintiff takes issue with the ALJ's findings at step three of the analysis that he does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment, submitting that his mental health impairments meet the criteria of Listing 12.04 (Affective Disorders) and 12.06 (Anxiety-Related Disorders). [ECF No. 11, at 9-10]. After careful consideration, I disagree.

In step three of the analysis set forth above, the ALJ must determine if the claimant's impairment meets or is equal to one of the impairments listed in 20 C.F.R., Pt. 404, Subpt. P, App.

1. Jesurum v. Sec'y of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995). An applicant is *per se* disabled if the impairment is equivalent to a listed impairment and, thus, no further analysis is necessary. Burnett v. Comm'r, 220 F.3d 112, 119 (3d Cir. 2000).

Affective Disorders under the applicable version of Listing 12.04 are characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. The required level of severity for these disorders is met when the requirements in both A and B of the Listing are satisfied, or when the requirements in part C of the Listing are satisfied. Thus, to fall within the listed impairment of section 12.04 (Affective Disorders), a plaintiff must show:

> A. Medically documented persistence, either continuous or intermittent, of one of the following:
>
> 1. Depressive syndrome characterized by at least four of the following:
>
>     a. Anhedonia or pervasive loss of interest in almost all activities; or
>
>     b. Appetite disturbance with change in weight; or
>
>     c. Sleep disturbance; or
>
>     d. Psychomotor agitation or retardation; or
>
>     e. Decreased energy; or
>
>     f. Feelings of guilt or worthlessness; or
>
>     g. Difficulty concentrating or thinking; or
>
>     h. Thoughts of suicide; or
>
>     i. Hallucinations, delusions, or paranoid thinking; or
>
> 2. Manic syndrome characterized by at least three of the following:
>
>     a. Hyperactivity; or
>
>     b. Pressure of speech; or
>
>     c. Flight of ideas; or
>
>     d. Inflated self-esteem; or
>
>     e. Decreased need for sleep; or
>
>     f. Easy distractibility; or
>
>     g. Involvement in activities that have a high probability of painful consequences which are not recognized; or

h. Hallucinations, delusions or paranoid thinking; or

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

AND

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration;

OR

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. pt. 404, subpt. P, app. 1 § 12.04 (2016).

As to Anxiety-Related Disorders under the applicable version of Listing 12.06, anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders. The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied. Thus, to fall within the listed impairment of section 12.06, a claimant must show:

A. Medically documented findings of at least one of the following:

> 1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:
>
> a. Motor tension; or
>
> b. Autonomic hyperactivity; or
>
> c. Apprehensive expectation; or
>
> d. Vigilance and scanning; or
>
> 2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or
>
> 3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or
>
> 4. Recurrent obsessions or compulsions which are a source of marked distress; or
>
> 5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;
>
> AND
>
> B. Resulting in at least two of the following:
>
> 1. Marked restriction of activities of daily living; or
>
> 2. Marked difficulties in maintaining social functioning; or
>
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
>
> 4. Repeated episodes of decompensation, each of extended duration.
>
> OR
>
> C. Resulting in complete inability to function independently outside the area of one's home.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.06 (2016).

Even assuming (as did the ALJ) that Plaintiff's mental impairments satisfy the "A" criteria of the listings, the ALJ concluded that those impairments do not satisfy the "B" criteria (which are identical in both listings). [ECF No. 8-2, at 27-29]. Specifically, the ALJ found that Plaintiff did not have marked limitations in any of the requisite areas. Rather, the evidence demonstrated only mild restriction in the activities of daily living, moderate difficulties with regard to social functioning, and mild difficulties with respect to concentration, persistence or pace. Id. The ALJ also found no evidence that Plaintiff had ever had an episode of decompensation of extended

duration.  Id.  Plaintiff argues that Dr. Gold's opinions support a finding that he meets both Listings 12.04 and 12.06 and, as treating source opinions, are entitled to controlling weight.  I disagree.

Contrary to Plaintiff's assertions, substantial record evidence supports the ALJ's careful analysis and findings in this regard.  For example, with respect to activities of daily living, Plaintiff reported that he is able to be a single parent to three daughters, perform personal care tasks, perform household chores, drive, go out alone, grocery shop, count change, watch television, go to church, coach several soccer teams, help his ill mother, go out once a week with friends, attend church, tutor a student in math, use a cell phone, text message, and use Facebook.  [ECF No. 8-2, at 28 (citing Exs. 6E, 1F, 9F, 23F, 27F, and Hearing Testimony)].  With respect to social functioning, the ALJ acknowledged Plaintiff's testimony that he is anxious around crowds, has a short temper, and avoids people because he does not want to be around them or take chances with his health.  Id.  He noted, however, that Plaintiff also reported, inter alia, that he is able to attend his daughters' school and sporting events, spend time with family, interact with other coaches without getting angry, socialize with friends once a week, go to a parade, attend an event at Heinz Field, and tutor a student through his church.  Id.  The ALJ further cited Plaintiff's therapist's statement that Plaintiff's anger issues had resolved.  Id.  Regarding concentration, persistence, and pace, the ALJ again cited Plaintiff's activities of daily living as support for his finding of mild limitations.  Id.  He also cited Plaintiff's mental status examinations showing good recent and remote memory, good attention and concentration, good abstraction, good information processing, above average intelligence, and goal directed thought processes.  Id. (citing Ex. 23F).  In short, it is evident from the ALJ's opinion that he reviewed the medical records and other record evidence and appropriately supported his conclusion that Plaintiff did not meet or medically

equal the requirements of Part B of the Listings at issue.

Plaintiff's argument that the ALJ erred because Dr. Gold's treatment records and medical opinions support a finding that she meets these Listings is without merit. Again, the standard is not whether there is evidence to establish Plaintiff's position but, rather, is whether there is substantial evidence to support the ALJ's finding. The Court cannot reweigh the evidence. Moreover, for the reasons set forth in the preceding section, the ALJ did not err in giving greater weight to the opinions of state agency consultant Dr. Urbanowicz than to treating physician Dr. Gold.[8] The ALJ provided appropriate reasons for the weight he assigned to Dr. Gold's and Dr. Urbanowicz's opinions, and he supported those reasons with substantial evidence. See 20 C.F.R. §§ 404.1527; 416.927; ECF No. 8-2, at 33-35 and exhibits cited therein.

For all of these reasons, I find the ALJ's conclusion that Plaintiff's impairments do not meet the criteria set forth in Listings 12.04 and 12.06 to be supported by substantial evidence in the record. Accordingly, remand is not warranted on this issue.

### III. <u>CONCLUSION</u>

For all of the foregoing reasons, Defendant's Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is denied. An appropriate Order follows.

---

[8] Because Dr. Gold's opinion was inconsistent with other medical evidence of record, *e.g.*, Dr. Urbanowicz's opinion, it was not, as Plaintiff urges, entitled to controlling weight. See Morales, 225 F.3d at 317 ("[W]here . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence).

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOHN D. WILTREK,

    Plaintiff,

vs.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,[1]

    Defendant.

Civil Action No. 18-131

AMBROSE, Senior District Judge

## ORDER OF COURT

AND NOW, this 26th day of March, 2019, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered that Defendant's Motion for Summary Judgment [ECF No. 14] is GRANTED, and Plaintiff's Motion for Summary Judgment [ECF No. 10] is DENIED.

                                             BY THE COURT:

                                             /s/ Donetta W. Ambrose
                                           Donetta W. Ambrose
                                           U.S. Senior District Judge

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017, and is automatically substituted as the Defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).